UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SAMUEL DEL CIELO, | )<br>) No. CV-09-123-JPH |
| Plaintiff, | )<br>) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT<br>) |
| MICHAEL J. ASTRUE, Commissioner<br>of Social Security, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on August 27, 2010 (Ct. Rec. 13, 18). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney David Burdett represents the Commissioner of Social Security (Commissioner). The parties have consented to proceed before a magistrate judge (Ct. Rec. 8). On April 6, 2010, plaintiff filed a reply (Ct. Rec. 20). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** defendant's motion for summary judgment (**Ct. Rec. 18**) and **DENIES** plaintiff's motion for summary judgment (Ct. Rec. 13).

### JURISDICTION

Plaintiff protectively applied for disability insurance benefits (DIB) on April 20, 2006, alleging disability beginning January 1, 1997 (Tr. 13). The application was denied initially and

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                              - 1 -

on reconsideration (Tr. 56-58, 61-62).

At a hearing before Administrative Law Judge (ALJ) Paul Gaughen on January 31, 2008, plaintiff, represented by counsel, and his spouse testified (Tr. 26-49). On July 3, 2008, the ALJ issued an unfavorable decision (Tr. 13-23). The Appeals Council denied Mr. Del Cielo's request for review on March 11, 2008 (Tr. 1-3). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 22, 2009 (Ct. Rec. 1,4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both plaintiff and the Commissioner, and are briefly summarized here.

Plaintiff was 48 years old at onset on January 1, 1997, and 51 on his last insured date (Tr. 29). He earned a bachelor's degree in accounting and worked as a "public accountant, non-licensed," and as a financial consultant (Tr. 31, 41, 85). Plaintiff states he last worked in 1996 but stopped due to what he later learned was bipolar disorder (Tr. 31-32). Mr. Del Cielo testified he was diagnosed with diabetes and heart disease in March 2000 [21 months before his insurance expired](Tr. 37). Around the same time, he experienced fatigue, numbness in his toes, leg pain with walking and extended standing, and no pain with sitting (Tr. 36-38). He had difficulty lifting and carrying. His spouse shoveled snow, carried groceries, and emptied the garbage because he could not (Tr. 39). In the fall of 2000,

catheterization testing revealed coronary artery disease (Tr. 38). Mr. Del Cielo alleges disability due to diabetes, coronary artery disease, bipolar disorder, depression, and anxiety (Tr. 33). Plaintiff indicates he did not socialize much but enjoyed playing pool and occasionally having friends over for dinner (Tr. 39-40).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of

1 impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).
2 If plaintiff does not have a severe impairment or combination
3 of impairments, the disability claim is denied. If the impairment
4 is severe, the evaluation proceeds to the third step, which
5 compares plaintiff's impairment with a number of listed
6 impairments acknowledged by the Commissioner to be so severe as to
7 preclude substantial gainful activity. 20 C.F.R. §§
8 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P,
9 App. 1. If the impairment meets or equals one of the listed
10 impairments, plaintiff is conclusively presumed to be disabled.
11 If the impairment is not one conclusively presumed to be
12 disabling, the evaluation proceeds to the fourth step, which
13 determines whether the impairment prevents plaintiff from
14 performing work which was performed in the past. If a plaintiff is
15 able to perform previous work, that Plaintiff is deemed not
16 disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At
17 this step, plaintiff's residual functional capacity ("RFC")
18 assessment is considered. If plaintiff cannot perform this work,
19 the fifth and final step in the process determines whether
20 plaintiff is able to perform other work in the national economy in
21 view of plaintiff's residual functional capacity, age, education
22 and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),
23 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).
24 The initial burden of proof rests upon plaintiff to establish
25 a *prima facie* case of entitlement to disability benefits.
26 *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*
27 *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is
28 met once plaintiff establishes that a physical or mental

impairment prevents the performance of previous work. *Hoffman v. Heckler*, 785 F.3d 1423, 1425 (9th Cir. 1986). The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (1999).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett,* 180 F.3d at 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On

review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

The ALJ found plaintiff was insured for DIB purposes through December 31, 2001 (Tr. 13, 15). At step one he found although plaintiff worked after onset, Mr. Del Cielo has not engaged in substantial gainful activity (Tr. 15). At step two he found plaintiff suffered from the medically determinable impairments of bipolar disorder, diabetes, obesity, and coronary artery disease, but they were not severe before his disability insurance expired (Tr. 16). Accordingly, at step two the ALJ found plaintiff was not disabled as defined by the Social Security Act during the relevant

period (Tr. 22).

**ISSUES**

Plaintiff contends the Commissioner erred as a matter of law when he found Mr. Del Cielo's mental and physical impairments are not severe (Ct. Rec. 14 at 9-15), and when he assessed credibility (Ct. Rec. 14 at 15-16).

Asserting the ALJ's decision is supported by substantial evidence and free of legal error, the Commissioner asks the Court to affirm (Ct. Rec. 19 at 6).

**DISCUSSION**

**A. Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747,

751 (9th Cir. 1989)(citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

Plaintiff alleges the ALJ failed to properly credit the opinions of treating psychiatrist Joseph Kurtz, M.D., examining psychologist John McCrae, Ph.D., and reviewing psychologist James Bailey, Ph.D. The Commissioner answers the ALJ properly (1) rejected Dr. Kurtz's opinion because it is unsupported by clinical evidence and appears based on plaintiff's unreliable self-report (Ct. Rec. 19 at 9); (2) rejected Dr. McRae's opinion because it is dated more than four years after plaintiff's last insured date

(Ct. Rec. 19 at 9-10), and (3) rejected Dr. Bailey's opinion because it is contradicted by other reviewing specialists who opined the evidence was insufficient to determine disability prior to plaintiff's last insured date (Ct. Rec. 19 at 10-11).

*Dr. Kurtz*

The ALJ notes within two months of starting psychotropic medication and stopping cocaine use [discussed more thoroughly below], plaintiff told Dr. Kurtz his mental condition improved. He was "feeling and sleeping well" (Tr. 22). The ALJ observes during plaintiff's treatment with Peter Ewing, M.D. (from June 2000 to May 2002), plaintiff made no complaints of any increased bipolar symptoms, nor of any significant leg or chest pain (Tr. 22). The ALJ accepted Dr. Kurtz's opinion plaintiff's symptoms appeared well-controlled with medication. The ALJ properly rejected Dr. Kurtz's opinion to the extent it appeared based on plaintiff's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)(an ALJ is not required to credit opinions based on plaintiff's unreliable self reporting).

*Dr. McRae*

More than four years after plaintiff's insurance expired, he was evaluated by Dr. McCrae (Tr. 308-315). He diagnosed bipolar disorder, most recent episode manic (Tr. 309). Dr. McCrae assessed marked limitations in several areas, including the ability to make decisions, perform routine tasks, and respond appropriately to and tolerate the expectations and pressures of a normal work setting. He assessed moderate limitations in five areas, including the ability to understand, remember and follow simple instructions (Tr. 310). The ALJ properly rejected this

opinion because it was rendered well after plaintiff's insurance expired and does not clearly relate to the relevant period. In order to receive disability insurance benefits, a claimant must be disabled as of the date his insured status expired. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

*Dr. Bailey*

On August 4, 2006, Dr. Bailey reviewed the record. He assessed marked and moderate limitations (Tr. 391-392) but opined plaintiff could do concrete tasks and work near others as long as the work was not cooperative (Tr. 393). The Commissioner accurately observes Dr. Bailey's opinion is contradicted by other reviewing professionals who opined the evidence of bipolar disorder is insufficient prior to plaintiff's last insured date, and Mr. Del Cielo presented no new evidence supporting his claim (Ct. Rec. 19 at 10, referring to Tr. 374-375). The ALJ is correct.

*Dr. Ewing*

The Commissioner points out the ALJ appropriately relied more heavily on the opinion of Dr. Ewing, who treated plaintiff during the relevant period, from June 2000 through May 2002, than on the examining and reviewing professionals (Ct. Rec. 19 at 9, Tr. 232-244). [The relevant period is January 1, 1997, through December 31, 2001.] This is appropriate since a treating doctor's opinion is entitled to the greatest weight. *Fair v.* Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989). Dr. Ewing's records show no complaints of bipolar disorder symptoms, nor of any ongoing physical complaints.

To further aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found him less than fully credible (Tr. 21). Credibility determinations bear on

1  evaluations of medical evidence when an ALJ is presented with
2  conflicting medical opinions or inconsistency between a claimant's
3  subjective complaints and diagnosed condition. *See Webb v.*
4  *Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).
5      It is the province of the ALJ to make credibility
6  determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
7  1995). However, the ALJ's findings must be supported by specific
8  cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
9  1990). Once the claimant produces medical evidence of an
10 underlying medical impairment, the ALJ may not discredit testimony
11 as to the severity of an impairment because it is unsupported by
12 medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.
13 1998). Absent affirmative evidence of malingering, the ALJ's
14 reasons for rejecting the claimant's testimony must be "clear and
15 convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).
16 "General findings are insufficient: rather the ALJ must identify
17 what testimony not credible and what evidence undermines the
18 claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v.*
19 *Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).
20     The ALJ gave several clear and convincing reasons for his
21 credibility assessment, including (1) plaintiff's allegations are
22 unsupported by medical evidence; (2) treatment has been sporadic,
23 and (3) plaintiff has inconsistently reported his drug use and
24 employment history (Tr. 18-19).
25     (1) *Lack of medical evidence*. The ALJ observes the alleged
26 severity of plaintiff's mental impairment is unsupported by the
27 medical evidence (Tr. 20):
28           The claimant stopped his psychiatric counseling
             with Dr. Kurtz in June 1999 stating he was moving.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                  - 11 -

> He told Dr. Kurtz at that time he was doing well and was selling his home and moving to Washington state. The claimant noted he was less irritable, had 150 clients, and had been trading stock for himself (Ex. 1F at Tr. 176).
>
> The next medical reference is from the new patient consult on June 14, 2000 with Dr. Ewing wherein the claimant stated he had been on sabbatical in Washington state for 10 to 12 months (Ex. 4F at Tr. 233). There is no indication whether claimant remained on his psychotropic medications during that period of time or whether he received any mental health counseling, thus suggesting that the claimant's symptoms may not have been as serious as he has alleged . . .
>
> The fact that he did not continue with any mental health counseling upon his return in June 2000 also leads to the conclusion that either the psychotropic medications were taking care of the situation or the claimant's initial condition was not completely related to a mental impairment, i.e., his cocaine use.

(Tr. 20).

Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the severity alleged, but it is one factor the ALJ may consider. See *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)(en banc). Plaintiff's statements to Dr. Kurtz during the relevant period that after taking medication he was doing well, had many clients, was able to trade stock, and did not pursue further treatment undercut allegedly disabling symptoms.

(2) *Noncompliance*. In 2006 plaintiff told Dr. McCrae, without explanation, he received outpatient mental health treatment in the early 1980's and in 1997 [last treatment was nine years earlier], and has "not taken medication reliably in the last six years or so" (Tr. 312). An unexplained, or inadequately

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 12 -

explained, failure to seek treatment or follow a prescribed course of treatment can cast doubt on a claimant's sincerity. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff has alleged a lack of treatment due to losing insurance, but the ALJ correctly points out plaintiff continued treatment with Dr. Ewing during a period he claims he lacked insurance, rendering plaintiff's explanation inadequate (Tr. 19).

(3) *Inconsistent reports of drug use and employment*. In 2006 plaintiff told Dr. McCrae he tried cannabis and cocaine in the late 1980's, but not since; has never used amphetamines or heroin, "has not used alcohol," and has had no difficulty with substance abuse (Tr. 312). The ALJ observes this is inconsistent with Mr. Del Cielo's statements to treating psychiatrist Dr. Kurtz in May 1998, when plaintiff acknowledged his long-standing substance addiction history (Tr. 18, referring to Exhibit 1F; 146-147). This included cocaine, marijuana, tobacco, alcohol and xanax. At the beginning of his treatment with Dr. Kurtz, plaintiff admitted he was using one tenth of a gram of cocaine daily (down from his prior amount of a half gram daily, for more than five years), drank a pint of tequila with six beers one or two days a week, and used marijuana about ten times from 1997-1998. The ALJ notes

> By July 17, 1998, less than three months after beginning treatment, the claimant noted feeling well, sleeping well and being in better control of his irritability. He also noted at that time he had been off cocaine for 3 weeks and was taking his psychotropic medications as prescribed by Dr. Kurtz.
>
> In contrast, when the claimant presented to the Boulder Community Hospital on April 3, 1998, one month before seeing Dr. Kurtz, the claimant stated he had been off cocaine for ten years with the exception of the "little cocaine" he put on the mucous membrane of an aching tooth just prior to

        the onset of the "jitters" that made him seek
        medical attention that very day.

(Tr. 18; Exhibits 1F, 3F).

    Plaintiff told Dr. Kurtz in 1998 he averaged $100,000 a year the preceding ten years as a self-employed financial analyst. The ALJ observes this statement conflicts with plaintiff's testimony he did not work after 1996 (Tr. 19). Similarly, ER records in April 1998 show plaintiff indicated he was working 16 hour days (Tr. 223). Although plaintiff proffers another meaning, that the income claimed is false and part of his bipolar symptomology (Ct. Rec. 14 at 11-12), the ALJ was entitled to rely on the inconsistency.

    Inconsistent statements diminish credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

    The ALJ correctly relied on several factors, including infrequent treatment for allegedly disabling symptoms and inconsistent statements when he found Mr. Del Cielo less than completely credible (Tr. 18-19).

    The ALJ's reasons for finding plaintiff less than fully credible are clear, convincing, and fully supported by the record. *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) (proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities). Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment also cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

    The ALJ's reasons for rejecting some of the opinions of

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14 -

plaintiff's mental limitations are specific, legitimate and supported by substantial evidence. Significantly, as the ALJ points out, there is no opinion in the record by a treating source indicating plaintiff's mental impairments interfere with his ability to perform work-like activities.

**B. Physical impairment**

Plaintiff's opening brief asserts the ALJ erred when he found no severe physical limitations at step two. He does not argue error with respect to physical limitations in his reply brief (Ct. Rec. 20).

When he weighed the evidence of physical impairment, the ALJ again considered plaintiff's lack of credibility. He notes plaintiff stated he lost assets and money from investors during his manic phase. Plaintiff did not admit, as he told Dr. Kurtz in 1998, charges were brought against him at the request of investors for allegedly fraudulent activities, and if convicted could result in a 3 to 5 year sentence (Tr. 19; Ex. 1F). The record contains no disposition. The ALJ observes Mr. Del Cielo's spouse told Dr. Kurtz plaintiff had a gambling problem, which may be another reason for financial losses other than bipolar disorder (Tr. 19; Ex. 1F).

In July 2000 plaintiff underwent cardiac catheterization and coronary angiography (Tr. 191-192). The ALJ points out in October 2001, two months before his insurance expired, plaintiff walked 30 minutes a day, 5 days a week, with no complaints of leg or chest pain (Tr. 20; Ex. 4F). Although plaintiff later underwent cardiac bypass surgery, the ALJ notes this was many years after plaintiff's last insured date (Tr. 22).

The ALJ observes there are no objective medical findings, nor any credible testimony, relating to symptoms during the relevant time frame that would support finding plaintiff had a severe medically determinable impairment, that is, one which would cause a significant interference in his ability to perform work-like activities from January 1, 1997 to December 31, 2001[1] (Tr. 22). As the ALJ correctly observes, Dr. Ewing's treatment records from June 2000 through May 2002 indicate plaintiff worked from his home as a financial consultant during that time frame (Tr. 19).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

The Court finds the ALJ's assessment of the evidence is supported by the record and free of legal error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

---

[1] As the ALJ accurately observes, plaintiff's SSI claim was granted, as of April 20, 2006. As this date is well after plaintiff's last insured date, it has no bearing on his DIB claim (Tr. 13 at n. 1).

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 18)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of defendant, and **CLOSE** this file.

DATED this 2nd day of September, 2010.

<u>s/ James P. Hutton</u>
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE